IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Concilio de Salud Integral de Loíza, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Municipality of Río Grande, <br><br> Defendant. | **Civil No. 21-01510(GMM)** |

**OPINION AND ORDER**

Pending before the Court is Municipality of Río Grande's ("Municipality") *Defendant's Motion to Dismiss* ("Motion to Dismiss"). (Docket No. 67). The Motion to Dismiss is DENIED.

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On February 3, 2020, Concilio de Salud Integral de Loíza, Inc. ("CSILO"), a provider of primary healthcare services to indigent communities, purchased a property in Río Grande for $3,600,000.00 ("Property"). (Docket No. 61 at 5). CSILO avers it planned to transfer its primary health services operations to the newly acquired Property but sought to remodel it first. Id. CSILO claims it attempted to pay the Municipality's construction excise tax, but the Municipality rejected the payment. On October 21, 2020, effective October 26, 2020, the Municipality approved Ordinance No. 2, Series 2020-2021 ("Ordinance") exercising eminent domain over the Property. Id. at 6. Per the Ordinance, the

Municipality would pay $3,500,000.00 as just compensation for the taking of the Property.

CSILO alleges that, on April 12, 2021, it issued a check to pay the construction excise tax for a second time, but the payment was, once again, rejected. Id.

On May 19, 2021, CSILO filed a mandamus[1] action in local court ("Puerto Rico Court"). It required the Municipality to accept its construction excise tax payment. (Docket No. 41, Exhibit 1). The Puerto Rico Court entered judgment against CSILO on July 13, 2021. (Docket No. 42, Exhibit 3 at 2-12). CSILO appealed. (Docket No. 14 at 2). While the Puerto Rico Court's appeal was pending, on October 19, 2021, CSILO filed suit before this Court. (Docket No. 1).

Here, CSILO sued the Municipality, its mayor, and municipal legislators for damages under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"); the Takings Clause of the Fifth Amendment of the Constitution of the United States, U.S. Const. amend. V ("Fifth Amendment"); the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, U.S. Const. amend. XIV ("Fourteenth Amendment"), unjust enrichment and general tort damages pursuant to the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 ("PRCC"). CSILO also sought injunctive relief to rectify physical and regulatory takings of

---

[1] Concilio de Salud Integral vs. Mun. de Río Grande, Civil Case No. FA2021CV00367.

its property under Rule 57 and Rule 65 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 57, 65 ("FRCP"). (Docket No. 1).

Thereafter, on July 6, 2022, the Municipality filed an eminent domain action[2] in Puerto Rico Court ("Puerto Rico Court Case"). (Docket No. 45 at 1; Docket No. 75, Exhibit 1). It deposited $3,600,000.00 in just compensation with the Puerto Rico Court. Id. On July 7, 2022, the Puerto Rico Court granted the Municipality the title to CSIL's Property. (Docket No. 75, Exhibit 2).

On August 26, 2022, CSILO filed an answer and counterclaim to the eminent domain action. It alleged, in sum, that the Municipality has no public use for the property and rejected the $3,600,000.00 in just compensation. (Docket No. 61 at 8). Specifically, CSIL alleged that:

> the amount that would correspond to CSILO is not included as fair compensation for the Municipality's material possession since it prevented CSILO from using the property, nor is included the amount that would correspond to CSILO as fair compensation for the Municipality's temporary possession of title. As part of the just compensation alleged by the Municipality, the damages that the Municipality has caused to CSILO for filing an expropriation of a property that is not subject to being expropriated due to federal interest and its previous public use of greater supremacy are not included either.

(Docket No. 75, Exhibit 3 at 3).

---

[2] Municipio de Rio Grande v. Adquisición de Finca 27,661 de la Urbanización Industrial Las Flores; Concilio de Salud Integral; SZ Development, Civil Case No. RG2022CV00284.

**Civil No. 21-01510(GMM)**
**Page** -4-

In the Puerto Rico Court Case, CSILO also claimed damages allegedly caused by the Municipality: "[f]rom the moment the [Municipality] denied CSILO the construction taxes on the property, it constituted an occupation or confiscation of private property because it was carried out without previously initiating an expropriation action and without paying fair compensation." (Docket No. 75, Exhibit 3 at 30).

On September 30, 2022, CSILO filed leave to amend the Complaint before this Court. CSILO stated it "reflects the new factual background related to the [Municipality's] filing [of] a Petition for Expropriation before the [Puerto Rico Court]". (Docket No. 55 at 1-2).

On December 15, 2022, this Court issued an Opinion and Order (Docket No. 60). It allowed CSILO to amend its complaint which CSILO did that same day.[3] CSILO's *First Amended Complaint* included facts related to its regulatory takings claims, removed its request for injunctive relief, and dropped the mayor and municipal legislators from the suit before this Court. (Docket No. 61). In addition, CSILO brought claims under Section 1983 and seeks damages for unjust enrichment and general torts under the Puerto Rico Constitution and PRCC. Id. CSILO argues that the Municipality

---

[3] The Court also denied, without prejudice, the individual-capacity defendant's *Motion to Dismiss for Failure to State a Claim* (Docket No. 27), the official-capacity defendant's *Motion to Dismiss for Lack of Jurisdiction* (Docket No. 29), the Municipality's *Motion to Stay* (Docket No. 43) and the Municipality's *Motion to Dismiss for Lack of Jurisdiction* (Docket No. 14).

violated the Fifth and Fourteenth Amendments to the U.S. Constitution by effecting a regulatory taking which deprived it of its Property's full use and enjoyment without just compensation, from October of 2020 (when the Ordinance was adopted) until the filing of the Puerto Rico Court Case in July of 2022. Id. at 8-13. CSILO alleges that the Municipality incurred in acts of regulatory taking in two separate instances: 1) when the Ordinance took effect on October 26, 2020; and 2) when the Municipality rejected the payment for the construction excise tax on April 12, 2021, which resulted in a *de facto* prohibition to develop, use, and enjoy the Property. Id.

On January 30, 2023, the Municipality filed a *Motion to Dismiss*. (Docket No. 67). It argues in favor of dismissal or staying the case under the United States Supreme Court abstention doctrine in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). The Municipality points to a current case, and other related cases, before the Puerto Rico Court involving the same parties and issues before this Court: Concilio de Salud Integral v. Mun. de Río Grande, Civil Case No. FA2021CV00367; Concilio de Salud Integral de Loiza, Inc. v. SZ Development, Civil Case No. CA2021CV02916; and Municipio de Rio Grande v. Adquisición de Finca 27,661 de la Urbanización Industrial Las Flores and Concilio de Salud Integral; SZ Development, Civil Case No. RG2022CV00284.

The Municipality contends that the case before this Court and the cases before the Puerto Rico Court arise over the same action: the Municipality's acquisition of CSILO's property via eminent domain. It adds that in at least two cases, the parties contest the effective date when the Municipality took control of the Property; whether it did so before via regulatory taking; and whether CSILO suffered damages attributable to the Municipality's actions.

The Municipality further asserts that CSILO's *First Amended Complaint* before this Court is no different from its *Answer to the Petition and Counterclaim* filed in the Puerto Rico Court Case. It adds CSILO demands equal compensation before both forums. The Municipality argues that although two (2) of the Colorado River factors are inapplicable or neutral to the facts before this Court, the remaining six (6) decidedly favor of this Court's abstention.

On March 22, 2023, CSILO filed its *Opposition to Docket 67 Motion to Dismiss*. (Docket No. 84). It argued against applying the Colorado River Doctrine. CSILO's avers that its *First Amended Complaint* before this Court solely focuses on the Municipality's regulatory taking from October of 2020 (Ordinance's approval and effective date) until July of 2022 (filing of the Puerto Rico Court Case). CSILO asserts it does not request this Court to determine the Property's public use or just compensation, but merely seeks damages under Section 1983 for violations within a specific

Civil No. 21-01510(GMM)
Page -7-

timeframe of the Fifth and Fourteenth Amendments and pursuant to the Supreme Court's recent ruling in Knick v. Township of Scott, 139 S. Ct. 2162 (2019).

The Court takes judicial notice that, on October 11, 2022, the Municipality filed a motion to dismiss CSILO's claims for damages at the Puerto Rico Court Case. On March 10, 2023, a Partial Judgment was issued accordingly. *See* Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001) (holding that federal courts may take judicial notice of proceedings in other courts if relevant to matters at hand).

## II.   LEGAL STANDARD

Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." Colorado River, 424 U.S. at 817. Further, it is well-established that a pending, parallel action in state court "is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." McClellan v. Carland, 217 U.S. 268, 282 (1910). Parallel litigation is not unusual to solve similar controversies at state and federal level. *See* Nazario-Lugo v. Caribevisión Holdings, Inc., 670 F.3d 109, 114 (1st Cir. 2012). Parallel litigation, in and of itself, does not warrant federal abstention. *See* Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 27 (1st Cir. 2010).

Yet, in Colorado River, the Supreme Court outlined exceptional circumstances in which "the pendency of a similar

action in state court may merit federal abstention based on 'considerations of wise judicial administration' that counsel against duplicative lawsuits." Jiménez, 597 F.3d at 27.

Most importantly a stay or dismissal of a federal lawsuit under Colorado River "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." Glassie v. Doucette, 55 F.4th 58, 64 (1st Cir. 2022) (*quoting* Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28, (1983)) (Emphasis added). For this reason, "it would be a serious abuse of discretion to grant [a] stay or dismissal at all" "[i]f there is any substantial doubt" "that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Id. "[T]o create the possibility of abstention under Colorado River, the federal- and state-court cases must be 'sufficiently parallel[.]'" Id. (*quoting* Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 533 (1st Cir. 1991)).

Accordingly, a court's "authority to find such a clear justification is confined by an exceptional circumstances test, whose non-exclusive list of factors" include:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived

nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Jiménez 597 F.3d at 27-28 (alteration in original) (citations and internal quotation marks omitted). "No one factor is necessarily determinative." Colorado River, 424 U.S. at 818-19. Rather, a court must engage in "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp., 460 U.S. at 16.

### III. APPLICABLE LAW AND DISCUSSION

Before examining whether it is appropriate to abstain under Colorado River, the Court reviews its jurisdiction over taking claims, and finds beneficial to distinguish "eminent domain actions" from "condemnation actions" as they are at the core of the federal claims.

A. Federal Takings Claim

The Takings Clause of the Fifth Amendment of the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. A property owner may bring a Fifth Amendment claim under 42 U.S.C. § 1983 to seek compensation for a government violation of the Takings Clause. See Knick, 139 S. Ct. at 2162. When governmental regulations deprive a property owner of all economically beneficial uses of their property, that owner has suffered a

compensable taking. *See* Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1019 (1992). Considering Knick, property owners need not exhaust state court proceedings before suing in federal court. Therein, the Supreme Court held that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." Knick, 139 S.Ct. at 2167. The Court, however, limited the scope of its holding in Knick by clarifying that it does "not expose governments to new liability; it. . .simply allow[s] into federal court takings claims that otherwise would have been brought as inverse condemnation suits in state court." Id. at 2179. *See* City of Jamaica Beach v. Williams, No. 3:20-CV-00241, 2020 WL 6120469, at *2 (S.D. Tex. Sept. 29, 2020), report and recommendation adopted, No. 3:20-CV-00241, 2020 WL 6060705 (S.D. Tex. Oct. 14, 2020).

Black's Law Dictionary describes "condemnation" broadly, as "[t]he determination and declaration that certain property. . .is assigned to public use" or "the exercise of eminent domain by a governmental entity." Condemnation, Black's Law Dictionary (11th ed. 2019). Condemnation may be either direct or inverse. Direct condemnation is a government-initiated proceeding to acquire title through eminent domain. *See* Knick 139 S.Ct. at 2168. Inverse condemnation, in contrast, is initiated by the property owner "to recover the value of property which has been taken in fact by the

Civil No. 21-01510(GMM)
Page -11-

governmental defendant." Id. (*quoting* United States v. Clarke, 445 U.S. 253, 257(1980)).

B. Colorado River Doctrine

As a threshold matter, the Court must decide whether the Puerto Rico Court Case and this one are "sufficiently parallel", *i.e.*, whether the "state action resolve[s] all of the claims in the federal case." Glassie, 55 F.4th at 64 (*quoting* Villa Marina Yacht Sales, Inc., 947 F.2d at 533). "[S]ome duplication alone is not enough to justify a stay of this federal action." Id. "[T]he crevice in federal jurisdiction that Colorado River carved is a narrow one," and abstention must be approached with "caution" and granted only where there is the "clearest of justifications." Id. (internal quotations omitted). A stay issued under the Colorado River doctrine "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." Id. (*quoting* Moses H. Cone Mem'l Hosp., 460 U.S. at 28).

Suits are considered parallel "when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." DePuy Synthes Sales, Inc. v. OrthoLA, Inc., 953 F.3d 469, 477 (7th Cir. 2020) (*quoting* Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004)). Perfect symmetry between cases is unnecessary. Rather, where both cases will be resolved using the same evidence and the same legal standard, it becomes "nearly

certain" that state litigation will dispose of the federal case, suggesting abstention is appropriate. *See* Driftless Area Land Conservancy v. Valcq, 16 F.4th 508, 526 (7th Cir. 2021).

As stated by this Court, "[i]f there is sufficient parallelism here, it will be between this case and the expropriation action." (Docket No. 60 at 10). The federal lawsuit between CSILO and the Municipality clearly covers significant common ground with the ongoing Puerto Rico Court Case. Undoubtedly, the parties are the same, the basic facts are the same and the issues are the same. That is, both cases arose over the same action: the Municipality's acquisition over the Plaintiff's Property via eminent domain. (Docket No. 75, Exhibits 1 and 3). Notably, the property interests at issue in the direct condemnation and the federal inverse condemnation actions are similar and the only variation is as to the way to obtain relief. In conclusion, upon reviewing the Municipality's complaint filed in the eminent domain action and CSILO's answer thereto, the Court concludes that the Puerto Rico Court Case is parallel to the present action in federal court.

Although, there is substantial doubt that the Puerto Rico state-court actions will solve the totality of CSILO's federal claims, the Court will weigh the relevant factors with adherence to the described applicable standard.

C.   Analysis of the Relevant Factors

    1.   Jurisdiction over a Res

The first factor, the assumption of jurisdiction over *res*, is inapplicable. Although the Puerto Rico Court originally assumed jurisdiction over the Property in the *in rem* proceeding of eminent domain, it later granted title to the Municipality. Therefore, there is no "possibility for inconsistent dispositions of property." Jiménez, 597 F.3d at 28 n.6.

    2.   Geographical Convenience

As to the second factor, both cases, state and federal, are in Puerto Rico. There is no indication that one forum is more convenient to the parties than the other. This factor, therefore, has no impact on the Court's analysis.

    3.   Desirability of Avoiding Piecemeal Litigation

The third factor considers whether abstention would assist in the avoidance of piecemeal litigation. "'[C]oncerns about piecemeal litigation. . .focus on the implications and practical effects of litigating suits deriv[ed] from the same transaction in two separate fora, and weigh in favor of dismissal only if there is some exceptional basis for dismissing one action in favor of the other.'" Jiménez, 597 F.3d at 29 (citation omitted). "[T]he district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some exceptional basis for requiring the case to proceed

entirely in the Commonwealth court." Villa Marina Yacht Sales, Inc., 947 F.2d at 535.

Here, both actions arise out of the same factual nucleus and involve similar legal issues. Yet, the record suggests that the Puerto Rico Court can adjudicate the eminent domain action without reaching the regulatory taking issue. As explained, eminent domain and regulatory takings suits compensate property owners for different injuries. Eminent domain actions compensate property owners for the forced sale of their properties to the government; the property is transferred to the government, and the owner is paid the property's fair market value, generally, as of the date the government made a deposit on the property. *See* Commonwealth v. Gerardo Fonalledas Córdova, 84 D.P.R. 573, 1962 PR Sup. LEXIS 172, (1962). Regulatory takings actions, on the other hand, compensate property owners for "[t]he economic impact of [a] regulation. . .and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 538–39 (2005) (*quoting* Penn Central Transp. Co v. New York City, 438 U.S. 104, 124 (1978)); *see also* Steven J. Eagle, Regulatory Takings § 8-9(a) (2021). Moreover, CSILO's counterclaim for damages was already dismissed in the Puerto Rico Court Case. Thus, the only remaining issue before the Puerto Rico Court is the justification of public use

and the just compensation amount for the physical taking of the Property.

To the extent that the issues before both courts, albeit similar, are not identical, and there is no identifiable risk of potential inconsistent rulings, this factor weighs against abstention.

4. <u>Order in Which the Forums Obtained Jurisdiction</u>

As to the <u>fourth</u> factor, the Supreme Court established that it "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 26. In other words, this factor "favors the case that is the more advanced at the time the <u>Colorado River</u> balancing is being done."

Even though, CSILO filed a mandamus at the Puerto Rico Court before suing in federal court —though related— it did not involve the adjudication of its regulatory takings claim. As to this issue (regulatory taking of CSILO's Property), CSILO filed its case first before the federal court, on October 19, 2021. While the Municipality could have invoked eminent domain to acquire the Property at any time, only when faced with an inverse condemnation claim for just compensation in federal court, did it file an eminent domain action before the Puerto Rico State Court, in July 2022. Notably, over a year and eight months transpired from when

Civil No. 21-01510(GMM)
Page -16-

the Ordinance took effect (October 26, 2020) to the Municipality's filing of the eminent domain action.

As to the procedural status of the cases, the Puerto Rico Court Case, while still pending, is more advanced. The Puerto Rico Court has ruled on dispositive motions affecting the parties while the instant action has not progressed beyond a motion to dismiss. This factor slightly favors abstention. *See* Jiménez, 597 F.3d at 31 ("absence of any federal proceedings beyond a motion to dismiss favors the surrender of jurisdiction").

5.   Whether State or Federal Law Controls

As to the fifth factor, "in some rare circumstances the presence of state-law issues may weigh in favor" of surrendering jurisdiction, but "the presence of federal-law issues must always be a major consideration weighing against surrender." Moses H. Cone Mem'l Hosp., 460 U.S. at 26. The source-of-law factor deserves no weight where "neither complex nor novel issues of local law are apparent." Nazario-Lugo, 670 F.3d at 118. When federal law controls most of the parties' claims, that factor is a "major consideration" against abstention. *See* Cedar Rapids Cellular Tel., L.P. v. Miller, 280 F.3d 874, 879 (8th Cir. 2002).

CSILO's *First Amended Complaint* seeks relief under federal and local law. Although the Municipality attempts to establish the existence of novel and complex issues of local law, the Court sees none. "[A]fter all, there is nothing extraordinary about federal

courts being called upon to analyze the law of different jurisdictions." Nazario-Lugo, 670 F.3d at 118.

The joint presence of federal statutory and constitutional claims weighs against surrendering jurisdiction.

6. Adequacy of State Forum

As to the sixth factor, although normally both courts can adequately protect the parties' interests, it appears that CSILO's regulatory taking claims under Section 1983 will only be addressed in federal court. Further, CSILO exercised its choice of forum to bring suit for alleged takings directly in federal court, as recently authorized by the Supreme Court in Knick. Therefore, this factor slightly inclines against abstention. *See generally* United States v. Fairway Cap. Corp., 483 F.3d 34, 43 (1st Cir. 2007) (understanding "this factor to be important only when it disfavors abstention.").

7. Vexatious or contrived nature of the federal claim

As to the seventh factor, CSILO filed its federal claim after the Municipality denied its request for an order requiring the Municipality to accept its construction excise tax payment in the Puerto Rico Court Case. They are not the same action. Furthermore, the Municipality filed the direct condemnation action in the Puerto Rico Court Case after CSILO filed its federal case. It is clear to the Court that CSILO amended its complaint in federal court as a reaction to the Municipality's filing, to narrow their claims for

damages for the regulatory taking, and dismiss claims against the Mayor and Municipal Legislators. There is no evidence that directs this Court to believe that CSILO filed this lawsuit vexatiously or that its federal claims are contrived.

8. <u>Respect for the principles underlying removal</u>

The <u>eighth</u> factor is inapplicable to the facts before the Court.

## IV.   CONCLUSION

Out of the eight factors, three are either inapplicable or neutral; one slightly favors abstention and the remaining four weigh against surrendering jurisdiction. Therefore, there is a "heavy presumption favoring the exercise of jurisdiction," <u>Currie v. Grp. Ins. Comm'n</u>, 290 F.3d 1, 10 (1st Cir. 2002), and there are no extraordinary circumstances present that overcome that presumption or justify abstention.

The Municipality's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, July 21, 2023.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE